WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VALJEAN JOSHEVAMA, JR., and JERRY HONAWA, individually and as representatives of a Class consisting of themselves and other Hopi tribal members observing tradition Hopi religious practices,<br><br>          Plaintiffs,<br><br>          v.<br><br>OFFICE OF SURFACE MINING, DEPARTMENT OF INTERIOR,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)  CIV 07-00577 PCT MEA<br>)<br>)  MEMORANDUM AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

    All of the parties who have appeared in this matter have consented to the exercise of magistrate judge jurisdiction over this case, including the entry of final judgment.  Before the Court are Plaintiffs' motions for a preliminary injunction and for leave to file an amended complaint, and Defendants' "Emergency Motion to Dismiss Case for Lack of Jurisdiction and to Stay Briefing on Motion for Preliminary Injunction."  Plaintiffs sought oral argument regarding the motion to dismiss and to stay briefing on the motion for a preliminary injunction.  See Docket No. 18.

1

2

3

4

5

6

7

8

9

10

11

12

13

**Background**

The subject of this suit is the public comment period set by Defendant Office of Surface Mining ("OSM"), pursuant to the National Environmental Policy Act ("NEPA"),[1] during which members of the public may comment on a draft Environmental Impact Statement ("EIS") regarding the proposed Black Mesa Project.[2]

On December 1, 2004, by means of publication in the Federal Register, Defendant OSM announced a 90-day public scoping process from December 1, 2004, through January 21, 2005, seeking input from the public regarding preparation of an Environmental Impact Statement for the Black Mesa Project. See Notice, 69 Fed. Reg. 69949-51. The publication announced public

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[1] The National Environmental Policy Act requires federal agencies to undertake a mandatory procedure, including soliciting and considering public input, when any proposed federal action implicates disruption of the natural environment.

    Regulations promulgated in 1973 amending NEPA provide: (d) Public review. The procedures established by these guidelines are designed to encourage public participation in the impact statement process at the earliest possible time. Agency procedures should make provision for facilitating the comment of public and private organizations and individuals by announcing the availability of draft environmental statements and by making copies available to organizations and individuals that request an opportunity to comment.

Final Rule, 38 Fed. Reg. 20555 § 1500.9(d) (Aug. 1, 1973).

[2]

    The Mohave Generating Station itself is not a part of the proposed Black Mesa Project, but the Black Mesa mining operation, the coal-slurry pipeline, and the Coconino aquifer water-supply system are dependent on resumption of operation of the power plant. ... the Mohave Generating Station is the mining operation's sole customer.

Docket No. 19, Exh. 3.

28

-2-

meetings regarding the EIS which would occur, *inter alia*, in Kayenta and Kykotsmovi, on the Hopi and Navajo reservations, during January of 2005.  Id.  The scoping comment period was later extended to March 4, 2005.  See Notices, 70 Fed. Reg. 6036 (Feb. 4, 2005).

Pursuant to the requirements of NEPA, after seeking public input regarding the project, a draft EIS was issued in November of 2006.  See Notices, 71 Fed. Reg. 67637 (Nov. 22, 2006).  In the notice announcing publication of the draft EIS, Defendant OSM set a deadline for public comments on the draft EIS of January 22, 2007.  Id.  The draft EIS regarding the Black Mesa Project comprises approximately 758 pages.[3]

Defendants aver the draft EIS has been available since November 2006 via the Internet, and that copies of the draft EIS are available at Hopi governmental and village locations, and that "an audio-visual DVD of the Executive Summary" is available in the Hopi language for free by request.  At least 235 copies of the translated Executive Summary DVD were distributed. Docket No. 18, Exh. 6.

Federal regulations require a minimum public comment period of at least 45 days subsequent to publication of an Environmental Impact Statement.  See 40 C.F.R. § 1506.10.  The purpose of the draft EIS procedure is to procure "informed agency and public comment. [] Regulations require the draft EIS

---

[3] Plaintiffs contend OSM "indefinitely halted" the EIS process after July 2006, and that the process was "restarted" in September of 2006.  Docket No. 18 at 2-3.

-3-

1  to be circulated to enable informed comments...."   Adler v.

2  Lewis, 675 F.2d 1085, 1096 (9th Cir. 1982).

3         As stated supra, pursuant to the requirements of NEPA,

4  Defendant OSM established a public comment period for the draft

5  EIS from November 22, 2006, through January 22, 2007, a period

6  of approximately 60 days, by means of publication of a notice in

7  the Federal Register.  In a Notice of Action issued January 10,

8  2007, the public comment period was formally extended through

9  February 6, 2007, by means of publication of a notice stating

10 such in the Federal Register.  See Notice, 72 Fed. Reg. 1764-65

11 (Jan. 16, 2007).[4]

12        Plaintiffs' counsel expressed a concern about the

13 ability of traditional Hopi to comment on the draft EIS, as the

14 comment period coincided with the Hopi winter ceremonial

15 calendar.  Docket No. 16, Exh. 5.  In response, in February

16 2006, OSM advised Plaintiffs' counsel, that "[t]o the extent

17

18        [4] The notice published in the Federal Register states:
   To ensure consideration in the preparation of the
19 final EIS, written comments must be received by
   OSM by 4 p.m. , m.s.t., on February 6, 2007.  A
20 public meeting to receive comments on the draft
   EIS will be held in Leupp, Arizona, on January
21 11, 2007, from noon to 4 p.m. at the Leupp
   Chapter House on Navajo Route 15.
22        The notice of the extension of the comment period also
   appears on the official Office of Surface Mining website, which stated
23 on May 4, 2007, and was last modified March 5, 2007:
   OSMRE has extended the closing date for public
24 comments to February 6, 2007.  OSM will not be
   extending the comment period beyond February 6,
25 2007.  To the extent practicable during
   preparation of the Final EIS, OSM will consider
26 comments on the Draft EIS that are received after
   February 6, 2007.
27 Available at www.wrcc.osmre.gov/WR/BlackMesaEIS.htm

28                              -4-

practicable, during preparation of the Final Environmental Impact Statement, OSM will consider comments arriving after February 6, 2007." Docket No. 16, Exh. 5 (dated February 15, 2007).[5]

Plaintiffs filed a complaint on March 16, 2007. Plaintiffs alleged Defendants substantially burdened their religious practice by setting a public comment period for the draft EIS coinciding with a period of time, i.e., November through February, during which their religion forbids them from engaging "in government or significant non-religious pursuits." Docket No. 1 at 2. The initial complaint alleged Defendants violated Plaintiffs' First Amendment right to the free exercise of their religion and their rights pursuant to the Religious Freedom Restoration Act, codified at 42 U.S.C. § 2000bb-1(c).[6]

_____

[5] The current schedule for the issuance of the final Environmental Impact Statement regarding the Black Mesa Project is July 18, 2007. Docket No. 16 at 7.

[6] The Religious Freedom Restoration Act ("RFRA") was enacted in 1993 as Congress' response to the free exercise analysis espoused by the United States Supreme Court in Employment Division v. Smith. The Religious Freedom Restoration Act provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Exception
> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
> 1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.
> (c) Judicial relief
> A person whose religious exercise has been

-5-

Plaintiffs further asserted their rights pursuant to the Treaty of Guadalupe Hidalgo were violated.  Plaintiffs also filed a motion seeking preliminary injunctive relief, i.e., that the Court order Defendants to "move" the comment period regarding the draft EIS, the same relief sought in the complaint.

Plaintiffs filed an amended complaint (Docket No. 11) on April 16, 2007, and subsequently sought leave to file the amended complaint.  See Docket No. 13.[7]  The amended complaint asserts Plaintiffs are "representatives of a Class consisting of themselves and other Hopi tribal members observing traditional Hopi religious practices".  Docket No. 11.  The amended complaint "seeks suitable remedies for the desecration of the traditionally religious portion of the Hopi calendar year by the Office of Surface Mining and the Department of the Interior."

---

burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.
42 U.S.C. § 2000bb-1 (2003 & Supp. 2006).

[7] An amended complaint supercedes the original complaint, leaving the original complaint without legal consequence. See, e.g., Forsyth v. Humana, Inc.,114 F.3d 1467, 1473 (9th Cir. 1997) ("a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint. [] This rule is premised on the notion that the amended complaint supersedes the original, the latter being treated thereafter as non-existent." (internal citations and quotations omitted)); Tellier v. Fields, 280 F.3d 69, 76 (2d Cir. 2000).

-6-

Id.[8]  The claim for relief seeks:

> a preliminary injunction, to be made into a permanent injunction, as deemed advisable, vacating the original November 2006-January 2007 comment period on the subject Draft Environmental Impact Statement on the Black Mesa Project, and restarting the comment period in the Spring of 2007 (or later) - outside the religious period of the traditional Hopi calendar.

Id.[9]  The amended complaint also asks the Court to certify this matter as a class action, and asks the Court to award attorney's fees.[10]

---

[8] Plaintiff Honawa asserts in his affidavit, dated March 4, 2007:

> I have had to engage in secular activities in direct contradiction to ancient teachings that govern these activities. In fact, because of the time of year, merely needing to make this affidavit is an example of my religious freedoms being violated.

Docket No. 2, Attach.

[9] Plaintiffs' amended complaint has two pages numbered "10" and two pages numbered "11". Defendants did not oppose the motion to file an amended complaint, stating leave was not required because no responsive pleading had yet been filed. Docket No. 14 at 1. Defendants disagree that class action certification is necessary or would save the amended complaint from the effects of the mootness doctrine. Id.

[10] Defendants further assert Plaintiffs do not have standing to assert the First Amendment rights of other "traditional" Hopi. Pursuant to Rule 23(a), Federal Rules of Civil Procedure, a plaintiff may be allowed, in the Court's discretion, to bring suit as a representative of or on behalf of other parties only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the purported representative plaintiff(s) are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. See, e.g., Brooks v. Educators Mut. Life Ins. Co., 206 F.R.D. 96, 108 (E.D. Pa. 2002). Plaintiffs Joshevama and Honawa have sought certification by means of a claim for relief in their amended complaint and the allegation in their supplemental pleading that they will seek certification "when" the motion to dismiss is denied.

1        On April 19, 2007, Defendants filed a motion to dismiss

2   the amended complaint for lack of jurisdiction asserting the

3   matter is moot.  See Docket No. 16.  Defendants aver the comment

4   period for the draft EIS has been extended through May 11, 2007,

5   allowing Plaintiffs and others similarly situated to comment on

6   the  draft  EIS  without  burdening  their  free  exercise  of

7   traditional Hopi religion.  The Court notes notice of such an

8   extension has not, as of May 4, 2007, been published in the

9   Federal Register.  Defendants contend Plaintiffs' free exercise

10  of their religion has not been burdened since February 18, 2007,

11  because traditional Hopi participation in governmental events

12  was not prohibited after this date.  Id. at 10.  Accordingly,

13  Defendants argue, Plaintiffs claim for injunctive relief is moot

14  because  Plaintiffs  received  the  relief  sought,  i.e.,  an

15  extension of the comment period.  Id.

16       Defendants allege the Hopi tribal government does not

17  favor extending the EIS process regarding the Black Mesa Project

18  because the Hopi tribal government favors re-opening the Black

19  Mesa Mine.  Id. at 5-6.

20              Even   accepting   Plaintiffs'   religious
             arguments, they have had since the February
21           18, 2007 new moon to submit their comments --
             over 50 days so far.  ....
22           **Furthermore, OSM has evaluated the status of
             progress  on  the  EIS  and  concluded  that
23           additional comments received by May 11 from
             Hopi  who  did  not  comment  for  religious
24           reasons  *will*  be  considered,  as  such
             consideration will not further delay the NEPA
25           process.**  ..
             [I]t  is  undisputed  that:  OSM  has  never
26           refused  or  failed  to  consider  comments  by
             Plaintiffs on the draft EIS; ...
27           Even if Plaintiffs' religious arguments are

28                          -8-

accepted, they will still have some 82 days,
from February 18, 2007 through May 11, 2007,
to comment on the draft EIS.

Id. at 8 (emphasis added).

Additionally, Defendants maintain the amended complaint

must be dismissed pursuant to Rule 19, Federal Rules of Civil

Procedure, for failure to join indispensable parties, i.e., the

Hopi Tribe and the Navajo Nation.    Id. at 13.    Defendants

maintain they would be prejudiced by injunctive relief, alleging

that reopening the comment period "could result in cancellation

of the Project and cause the Hopi Tribe and Navajo Nation to

lose the vital economic and other benefits that the Project

offers."    Id. at 16, citing Lomayaktewa v. Hathaway, 520 F.2d

1324, 1325 (9th Cir. 1975).[11]

_____

[11] In Lomayaktewa, the Ninth Circuit Court of Appeals held
the Hopi Tribe was an indispensable party to litigation brought by
"traditional Hopi" plaintiffs to void a lease of Indian land to a
coal-mining company.  Defendants argue:

These and other benefits to the Tribe are
dependant on prompt approval of the Project. The
owners of MGS have made clear that investing the
capital necessary to restart MGS will be
economically viable only if NEPA approval of the
Black Mesa Project occurs on the timetable
already established by OSM and approved by the
Tribe. [] By filing this lawsuit, Plaintiffs seek
to unreasonably extend and delay that timetable,
making the Project a financial impossibility and
depriving the Tribe of its expected economic and
other benefits. In essence, Plaintiffs' request
for an injunction is an attempt to halt the
Project entirely. The Tribe therefore strongly
supports dismissal of this lawsuit.[] As
discussed in the Motion to Dismiss, the severe
potential prejudice to the Tribe, outlined above,
together with the Tribe's sovereign immunity
makes it an indispensable party to this
litigation. .... The case must therefore be
dismissed.

Docket No. 22 at 9.  As noted, infra, the basis of the complaint is

1    Plaintiffs filed a response to the motion to dismiss
2    and the motion to stay briefing on their motion for injunctive
3    relief.  See Docket No. 18.  Plaintiffs assert their claims are
4    not mooted by the extension of the comment period because
5    Defendants have averred only that comments submitted by May 11,
6    2007, will be considered "to the extent [it is] practicable to
7    do so."  Docket No. 18 at 2, 5 & n.5.  Plaintiffs maintain it is
8    necessary to vacate the prior comment period and establish a new
9    comment period to ensure "OSM will be forced to consider ___all___
10   comments."  Id. at 5 (emphasis in original).[12]  Plaintiffs further
11   contend the allowance of "late" comments to the draft EIS "does
12   not also provide the substantial collateral benefits,
13   safeguards, and features of a regular comment period."  Id. at
14   7.

15   On April 27, 2007, the Court issued an order allowing
16   the parties until May 4, 2007, to file any further pleadings

17

18   the assertion that Defendants violated Plaintiffs' rights pursuant to
     RFRA, and it is not at all clear that the Hopi tribal government or
19   the Navajo Nation would be parties indispensable to the resolution of
     that issue.
20

21         [12] Plaintiffs also argue:
           [T]he comment period is not simply a time to make
22         comments, it is also a time: (1) to consider
           presentations by the government; (2) to consider
23         arguments by experts, advocates and detractors;
           (3) to discuss and debate the matter with friends
           and opponents; (4) to reach a considered opinion
24         on what comments should be made; (5) to draft,
           revise, and submit the comments.  Plaintiffs are
25         asking for a new, complete comment period to make
           full and fair comments.  Any other relief would
26         be deficient.
     Docket No. 18 at 6.
27

28                              -10-

regarding the motion to dismiss the amended complaint. Plaintiffs filed a supplement to their response to the motion to dismiss. <u>See</u> Docket No. 21. In this pleading, Plaintiffs note Defendants did not file any notice of extension of the relevant comment period in the Federal Register, asserting without citation this would be the "only valid way to make such an extension." <u>Id.</u> at 2. Plaintiffs allege Defendants are "not being candid" with the Court with regard to whether Defendants would be required to consider comments to the draft EIS submitted after February 6, 2007, beyond the "extent practicable." <u>Id.</u> Plaintiffs assert

> the offer to consider comments from Plaintiffs is invalid, because it was never published in the Federal Register. Thus, even if the named Plaintiffs made comments, without publication of an extension of the comment period in the Federal Register, Defendants could just ignore the Plaintiffs' comments with no adverse consequences at all. ... Defendants' extension offer was just a pretense with no legal substance.

<u>Id.</u> at 3 (emphasis removed). Attached to this supplemental pleading are the identical sworn but not notarized declarations of 71 "members of the Hopi tribe complaining about their exclusion from the original comment process because the federal government scheduled the original comment process during the traditional Hopi religious calendar." <u>Id.</u> at 2 (emphasis removed). Each of these declarations states:

> A vitally important part of the traditional Hopi religious practice is observance of the winter ceremonial calendar, which roughly goes from November thru January, or even a little longer. I was unable to participate in the comment process concerning Black Mesa

Project Draft Environmental Impact Statement
because the Federal Government scheduled the
comment process during the Hopi winter
ceremonial calendar. The Black Mesa Project
Draft EIS is extremely important to me, to my
religion, to the water that are a part of my
religion and beliefs, and to the Hopi people.
If given the chance, I would participate in
the comment process, which I understand
involves meetings, presentations, discussions
with representatives of the Office of Surface
Mining and Peabody. The overall comment
process is very important to me. I am
saddened the Federal Government stole the
chance that I had to participate in the
original comment process and hope that the
Federal Court can give me and the other
members of my tribe a chance to participate
to comment process.

Id., Attach.

Defendants filed a reply to Plaintiffs' response to the motion to dismiss on May 4, 2007. See Docket No. 22. Defendants allege: "Plaintiffs' claim that OSM only agreed to consider their comments 'to the extent practicable' ignores the April 9, 2007 letter and is mistaken." Id. at 4. Defendants argue:

Plaintiffs' response inaccurately asserts
that OSM has only agreed to consider
Plaintiffs' comments if "practicable" and
mistakenly concludes that the case is
therefore not moot. Plaintiffs' case is moot
because OSM has agreed to fully consider and
respond to comments submitted by Plaintiffs
and other traditional practitioners, not just
"to the extent practicable." It is well-
settled that "[c]orrective action by an
agency ... can moot a previously justiciable
issue."

Id. at 3 (emphasis in original and citations omitted).

Defendants further aver:

by letter dated April 9, 2007, OSM notified
Plaintiffs that if they submit comments by

-12-

> May 11, 2007—nearly three months after the end of the period of religious observance that they assert—those comments *will* be fully considered. *See* Motion to Dismiss, Ex. 7. **Public comments are still being considered, and found among them are comments made by both Plaintiffs** at public meetings January 4, 2007. See attached Exhibit 12 (Comments of Valgean Joshevama, Jr., 01-04-07 at Hopi Wellness Center) and Exhibit 13 (Transcript of public comments, Veteran's Center, Second Mesa, Jerry Honawa, pages 21- 27) ...

Id. at 4 (bold emphasis added).  Defendants further allege:

> the Hopi Tribe took several steps to assure that Tribal members were notified of their ability to submit comments through May 11, including: issuing a press release to the local newspaper, posting notice in the community center of each Hopi village, and holding public meetings to accept oral and written comments. []. Notably, two individual Hopi, Doran Dalton and Benjamen Nuvamsa, whose declarations complaining about the original comment period are attached to Plaintiffs' Supplement, appeared and submitted or are submitting comments. [] Like those individuals, Plaintiffs and the other declarants remain free to submit comments to the Hopi Tribe and OSM through May 11th to have them considered (or thereafter to the extent practicable).

Id.

Defendants contend Plaintiffs have not maintain the litigation in good faith:

> A reasonable inference can be drawn from Plaintiffs' continued refusal to submit additional comments, that the purpose of this litigation is to monkey wrench the Black Mesa project rather than to obtain the procedural opportunity provided by NEPA to comment on the project DEIS.

Id. at 6.

With regard to Plaintiffs' argument Defendants will not be required to review comments submitted by May 11, 2007,

-13-

because a notice of extension of the deadline was not published in the Federal Register, Defendants state:

> [Plaintiffs'] counsel has constructed a straw-man argument that comments can be disregarded because the commitment to consider them was not published in the Federal Register. On the contrary, OSM would be compelled to consider the late comments, by judicial estoppel alone. *Klamath Siskiyou Wildlands Center v. Boody*, 468 F.3d 549, 555 (9th Cir. 2006). Federal Register publication is not required where an agency merely requests public comments or considers late comments. 40 C.F.R. §§ 1503.1; 1506.6. The "unclean hands" doctrine applies to this attempt to misuse NEPA procedures – indeed, rather than exercise their existing right to comment on the DEIS, Plaintiffs are just trying to kill the project by obtaining a preliminary injunction.

Id. at 7.

### Analysis

### Standard for granting or denying a motion to dismiss

It is presumed that a federal court is without jurisdiction to hear a claim.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 144 S. Ct. 1673, 1675 (1994).  Rule 12(b)(1), Federal Rules of Civil Procedure requires a court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction [.]" Inge v. Rock Fin. Corp., 281 F.3d 613, 629 (6th Cir. 2002).  The Court does not have subject matter jurisdiction over a suit wherein the plaintiffs do not have a legally cognizable interest in the outcome.  See Earth Island Inst. v. United States Forest Serv., 442 F.3d 1147, 1157 (9th Cir. 2006) (noting the federal courts would otherwise be issuing an advisory opinion), cert.

-14-

<u>denied</u>, 75 U.S.L.W. 3523 (Mar. 19, 2007); <u>Ruiz v. City of Santa</u>
<u>Maria</u>, 160 F.3d 543, 549 (9th Cir. 1998).

    To survive a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the plaintiff must prove that the relevant jurisdictional requirements are satisfied.  <u>See</u> <u>Development Fin. Corp. v. Alpha Housing & Health Care</u>, 54 F.3d 156, 158 (3d Cir. 1995).  A Rule 12(b)(1) challenge may be a factual challenge to the complaint.  <u>See</u> <u>Mortensen v. First Fed.</u> <u>Savings & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  The Court may hear evidence and resolve disputed facts when considering a Rule 12(b)(1) motion.  <u>See</u> <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).

>     The Court may consider material outside of the pleadings of the action when dealing with a factual attack on subject matter jurisdiction, such as affidavits and testimony, without converting the motion to dismiss into one for summary judgment. Furthermore, it is the plaintiff who bears the ultimate burden of proving that subject matter jurisdiction exists, and argumentative inferences favorable to the pleader should not be drawn.

<u>Abbott Chemical, Inc. v. Molinos de Puerto Rico, Inc.</u>, 62 F. Supp. 2d 441, 445-46 (D.P.R. 1999) (internal citations and quotations omitted).

>     When deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), it is proper for the district court to look beyond the jurisdictional allegations in the Complaint and to view all evidence submitted. This standard differs from the one district courts use when deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); in the latter case, when

> the district court looks beyond the pleadings, the court is to treat the motion as one for summary judgment under Fed. R. Civ. P. 56(c).  In deciding the instant motion to dismiss for lack of subject matter jurisdiction, we will consider all relevant documents.

Osario v. Harza Eng'g Co., 890 F. Supp. 750, 751 (N.D. Ill. 1995) (internal citations omitted).

**Mootness**

To pursue a claim in federal court, a party must maintain a live controversy through all stages of the litigation process, rather than just at the time the complaint is filed. See DiGiorgio v. Lee, 134 F.3d 971, 974 (9th Cir. 1998).  If a claim loses its character as a live controversy the plaintiffs then lack a legally cognizable interest in the outcome.  See Ruiz, 160 F.3d at 549.  Where plaintiffs without a legally cognizable interest in the relief sought do not have standing to sue, their claims are moot.  Id.  See also Earth Island Inst., 442 F.3d at 1157.  "[T]he question is not whether the precise relief sought at the time of the application for an injunction was filed is still available.  The question is whether there can be any effective relief." Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001).

Mootness is not a basis for dismissal if the challenged activity is capable of repetition yet evades judicial review, or if there is a "reasonable expectation" the plaintiffs will face the same conduct in the future.  Mahoney v. United States Marshals Serv., 454 F. Supp. 2d 21, 31 (D.D.C. 2006).  Voluntary cessation of allegedly wrongful conduct moots a claim only if it

-16-

is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  <u>Adarand Constructors, Inc. v. Slater</u>, 528 U.S. 216, 222, 120 S. Ct. 722, 725 (2000). Defendants bear the "heavy burden" of persuading the Court that the challenged conduct cannot reasonably be expected to resume. <u>See</u> <u>id.</u>

Defendants assert the claims raised in the complaint are moot and, accordingly, that the complaint must be dismissed. Defendants argue the matter is moot because the comment period for the draft EIS has been extended beyond the date traditional Hopi may not participate in governmental matters.

Plaintiffs contend the extension of the comment period does not moot their claims because Defendants will not be required to consider comments submitted after February 6, 2007 and by May 11, 2007, but instead will only consider those comments if practicable.  Plaintiffs state:

> the Plaintiff Class seeks an entirely ***new*** comment period where OSM ***must*** pay attention to their comments, and the Plaintiff Class can participate in all of the normal studies, debates, and processes concerning the Final EIS. ... In any event, "practicable" means "maybe," and is ***not*** the same as "must." Therefore, the case is not moot.

Docket No. 18 at 5.

Assuming Plaintiffs' assertions as true, the period during which their religion prohibited them from commenting on the draft EIS ended no later than when they became engaged in this suit, i.e., March 16, 2007.  The Court notes the prohibition arguably ended much sooner, i.e., at the beginning

-17-

of February.   Because the comment period has been extended to May 11, 2007, Plaintiffs have at least 55-60 days to review the draft EIS and submit comments, a reasonable period of time to offer public comment on the draft EIS, notwithstanding its length.   See Kootenai Tribe v. Veneman, 313 F.3d 1094, 1118-19 (9th Cir. 2002) (concluding a 69-day comment period regarding a 700 page draft Environmental Impact Statement satisfied the requirements of the National Environmental Policy Act, stating: "[w]hether still more time might have been beneficial to some parties is not the issue.").[13]

Plaintiffs assert they need time to not only comment on the draft EIS but also to actually consider what their position on the draft EIS might be, after conferring with others and reviewing the available information, rendering the May 11, 2007, deadline unreasonable and an undue burden on their free exercise of their religion.   However, the issue stated in the amended complaint is not the length of the comment period, i.e., whether Plaintiffs will have enough time to review and evaluate the draft EIS, but the fact that the comment period overlapped with a time during which Plaintiffs were prohibited by their religion from participating in governmental affairs.

---

[13] The Court agrees with Defendants that Plaintiffs do not have a substantive, judicially-enforceable right to submit public comments to any particular EIS "dependent on demands of their individual schedules."   Docket No. 16 at 4 n.1.   However, this is not a suit brought under NEPA or the Administrative Procedures Act, but a claim that government action violated the free exercise of Plaintiffs' right to the free exercise of their religion, a right enhanced by the RFRA.

-18-

1          Additionally, the Court finds this factual allegation
2    disingenuous and not believable.   Plaintiffs' position on the
3    Black Mesa Project is apparently well-informed and completely
4    formulated, and presumably has been for some time.   Plaintiffs
5    aver the Black Mesa Project proposal was the subject of a NEPA
6    process which was "halted" from July of 2006 through September
7    of 2006.   Docket No. 18 at 2-3.   Plaintiffs were aware,
8    presumably, of the nature of the project and the potential
9    conclusions reached in the draft EIS no later than its
10   publication in November 2006; both Plaintiffs stated their
11   opposition to the Black Mesa Project and their frustration at
12   the Hopi Tribal Council's apparent support for the project at a
13   public meeting conducted January 4, 2007.   See Docket No. 22,
14   Exh. 12 & Exh. 13.   On January 4, 2007, Plaintiff Josehvama
15   stated: "As I have been reading the EIS report, I understand
16   that it has already traveled among the People and I have been at
17   some of those hearings..."   Id., Exh. 12.   Plaintiff Honawa
18   stated on that date that he had not read "a page" of the draft
19   EIS, although he had "studied this thing and worked on this
20   thing more so than my Council has."   Id., Exh. 13.

21         Furthermore, the operation of the Black Mesa mine, the
22   re-opening of the Mohave Generating Station, and the re-
23   commissioning of the coal-slurry pipeline, have all been the
24   subject of intensive debate among Hopi, and a subject of
25   disagreement between "traditional" Hopi and the Hopi tribal
26   government for some time.   The Court is not unaware of these
27   conflicts, however, this forum is not the appropriate venue for

28                                   -19-

resolution of the dispute between "traditional" Hopi and the Hopi tribal government,[14] specifically with regard to the desirability of further mining at Black Mesa, the use of groundwater to slurry coal, or the re-commissioning of the Mohave Generating Station.    The issue before this Court, presented in the amended complaint, is the ability of traditional Hopi to comment on the draft EIS without a substantial burden being placed on the free exercise of their religious beliefs.

The Court agrees with Defendants that Plaintiffs mis-state the effects of Defendants' extension of the comment period for the draft EIS.  In a letter addressed to Plaintiffs' counsel dated April 9, 2007, and sent "in response" to the filing of this suit, Defendant OSM stated:

> OSM has determined that it will be practicable to consider in the final EIS the comments of the plaintiffs if they are received by May 11, 2007, consistent with OSM's earlier letter to you in which we stated that OSM would consider to the extent practicable comments received after the close of the comment period, February 6, 2007.

Docket No. 18, Exh. 7.  A similar letter was sent to the Vice-Chairman of the Hopi Tribe, and the tribe took a "number of actions to disseminate" the information that public comments regarding the draft EIS submitted by May 11, 2007, would be considered.  See Docket No. 22, Exh. 14, Exh. 15, Exh. 16.

---

[14] See United States v. Tawahongva, 456 F. Supp. 2d 1120 (D. Ariz. 2006).

-20-

1    The relief sought, the allowance of public comments
2  during a period when traditional Hopi are not prohibited from
3  governmental participation, has already been allowed by
4  Defendants.  The Court would be redundant in ordering Defendants
5  to do something which Defendants have already done, i.e.,
6  extending the formal comment period beyond the date Plaintiffs,
7  individually and as the purported class, may not, pursuant to
8  their free exercise, comment on the draft EIS.    See Berg v.
9  LaCrosse Cooler Co., 548 F.2d 211, 213 (7th Cir. 1977).
10 Furthermore, as Defendants note, Defendants would be judicially
11 estopped from asserting in any future suit that they were not
12 required to consider comments submitted by May 11, 2007.  See,
13 e.g., Whiting v. Krassner, 391 F.3d 540, 543-44 (3d Cir. 2004),
14 cert. denied, 545 U.S. 1131 (2005).

15   A finding that Plaintiffs' claims are moot does not
16 have any res judicata or collateral estoppel effect on any
17 future decision regarding Defendants' establishment of a NEPA
18 public comment period which again conflicts with observance of
19 their religion by traditional Hopi.  It is arguable whether
20 Plaintiffs would be barred from bringing a suit challenging the
21 final EIS if they did not submit comments to the draft EIS.  See
22 High Sierra Hikers Ass'n v. United States Forest Serv., 436 F.
23 Supp. 2d 1117, 1147 (E.D. Cal. 2006) (noting this issue is
24 "unsettled" in the jurisdiction of the Ninth Circuit Court of
25 Appeals).

26   Plaintiffs contend the allegation their claims are moot
27 is contravened by their assertion of the suit as a class action.
28                              -21-

However, the federal courts have generally concluded a suit styled as a class action becomes moot when the claim of the individual plaintiff becomes moot. See, e.g., Sosna v. Iowa, 419 U.S. 393, 399-400, 95 S. Ct. 553, 557-58 (1975) (holding that, in order to meet the case or controversy requirement of Article III there must not only be a named plaintiff who has such standing at the time the complaint is filed, but there must continue to be a live controversy at the time the class action is certified by the District Court); Cruz v. Farquharson, 252 F.3d 530, 534 (1st Cir. 2001). A named plaintiff in a class action must, to establish standing, show that the threat of injury is still "real and immediate," rather than "conjectural" or "hypothetical." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974); Golden v. Zwickler, 394 U.S. 103, 109-10, 89 S. Ct. 956, 960-61 (1969).

To continue their involvement in a suit the named plaintiff must be a member of the class which he seeks to represent at the time the class action is certified by the District Court. See, e.g., Troy v. Shell Oil Co., 519 F.2d 403, 404-05 (6th Cir. 1975). Compare Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000)[15] ("So

---

[15]

In addition to the requirements expressly enumerated in Rule 23, class actions are also subject to more generally applicable rules such as those governing standing and mootness. For instance, a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class. [] Additionally, even a plaintiff with

-22-

1   long as a class representative has a live claim at the time he
2   moves for class certification, neither a pending motion nor a
3   certified class action need be dismissed if his individual claim
4   subsequently becomes moot.").

5          **Conclusion**

6          This matter is moot because relief sought on the claim
7   stated in the amended complaint, i.e., establishment of a
8   comment period regarding the draft EIS which did not violate the
9   free exercise of Plaintiffs' religion, has been allowed by
10  Defendants.   Accordingly, there is no meaningful relief to be
11  awarded by the Court and Plaintiffs have no standing because
12  they lack a cognizable legal interest in the subject of the
13  amended complaint.

14

15

16

17  ─────────────────

18          standing is generally disqualified from
        representing a class if his individual claim
19          becomes moot before the proposed class is
        certified. []. Not surprisingly, however, there
20          are exceptions to this general rule. One such
        exception is at issue in this case.
21           So long as a class representative has a live
        claim at the time he moves for class
22          certification, neither a pending motion nor a
        certified class action need be dismissed if his
23          individual claim subsequently becomes moot. *[]*
        If, on the other hand, the putative class
24          representative's individual claim becomes moot
        before he moves for class certification, then any
25          subsequent motion must be denied and the entire
        action dismissed.
26  Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135-36
    (3d Cir. 2000).

27

28                                  -23-

1    **THEREFORE, IT IS ORDERED that** Defendants' motion to dismiss

2   the amended complaint is **granted**.   Plaintiffs' amended complaint

3   is hereby **DISMISSED WITH PREJUDICE**.

4    DATED this 7th day of May, 2007.

_____
Mark E. Aspey
United States Magistrate Judge

-24-